**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CASTRO BROWN,**

                                        **Plaintiff,**

        **vs.**                                                **5:11-CV-751**
                                                                  **(MAD)**

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

OLINSKY LAW GROUP                    Howard D. Olinsky, Esq.
300 S. State Street
5th Floor, Suite 520
Syracuse, New York
_Attorney for Plaintiff_

Social Security Administration       Joanne Jackson, Esq.
Office of Regional General Counsel   Mary Ann Sloan, Esq.
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
_Attorney for Defendant_

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

        Plaintiff Castro Brown, brings the above-captioned action pursuant to 42 U.S.C. § 405(g),

seeking a review of the Commissioner of Social Security's decision to deny his application for

supplemental security income ("SSI").

**PROCEDURAL BACKGROUND**

On April 24, 2007, plaintiff filed an application for SSI benefits alleging a disability beginning on August 15, 2005. (Administrative Transcript at p. 60, 100).[1]  Plaintiff provided his prior work history from 1970 through 2007 which included work as a carpenter, painter and machine operator. (T. 133).  Plaintiff claimed that he was disabled due to stomach issues, anxiety, difficulties with memory and concentration, sleep disturbances, suicidal ideations, shortness of breath, allergies, chest pains and back pain. (T. 111).  On June 21, 2007, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on September 22, 2009. (T.14).  On October 8, 2009, the ALJ issued a decision denying plaintiff's claim for benefits.  (T. 24). The Appeals Council denied plaintiff's request for review on May 4, 2011, making the ALJ's decision the final determination of the Commissioner. (T. 1-6).  This action followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To be eligible for DIB, plaintiff must establish that his disability commenced on or before the date her insured status expired.  42 U.S.C. §§ 423(a)(1)(A) and (c)(1); 20 C.F.R. § 404.131.  The plaintiff carries the initial burden of proving he is disabled within the meaning of the Act.  42 U.S.C. §§ 423(d) (5)(A); *see Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002).

There is a five-step analysis for evaluating disability claims:

---

[1] "(T. )" refers to pages of the administrative transcript, Dkt. No. 8.

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert*, 311 F.3d at 472) (the plaintiff bears the burden through the first four steps of the analysis); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131.  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the date of his application, April 24, 2007. (T. 16).  At step two, the ALJ concluded that plaintiff suffered from degenerative disc disease of the lumbar spine and pulmonary disorder which qualified as "severe impairments" within the meaning of the Social Security Regulations (the "Regulations").  (T. 16).  At the third step of the analysis, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or equal the severity of any impairment listed in Appendix 1 of the Regulations.  (T. 20).  The ALJ found that plaintiff had the residual functional capacity ("RFC") to, "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour day and sit 6 hours in an 8-hour day.

He must avoid concentrated exposure to respiratory irritants". (T. 20). At step five, relying on the medical-vocational guidelines ("the grids") set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. (T. 22-23). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 23).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ erred at Step Two in failing to find that plaintiff's depression and personality disorder were severe impairments; (2) the ALJ failed to develop the record when she failed to obtain a treating physician's opinion of functional limitations; (3) the ALJ's RFC determination is not supported by substantial evidence; (4) the ALJ improperly assessed plaintiff's credibility; (5) the ALJ's determination at step five is not supported by substantial evidence as the ALJ should have elicited testimony from a vocational expert; and (6) the Appeals Council failed to remand in light of new evidence during the relevant time period. (Dkt. No. 11).

## I.    Severity of Mental Impairments

Plaintiff argues that the ALJ erred by failing to find that plaintiff's depressive disorder and personality disorder were severe impairments. Plaintiff has the burden at step two in the sequential evaluation process to demonstrate the severity of his impairment. *See* 20 C.F.R. § 404.1520( c ). The severity analysis at step two may do no more than screen out *de minimis* claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995). The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue*, 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

"When evaluating the severity of mental impairments, the regulations require the ALJ to apply a 'special technique' at the second and third steps of the review, in addition to the customary sequential analysis." *Lint v. Astrue*, 2009 WL 2045679, at *4 (N.D.N.Y. 2009) (citing *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a)). First, the ALJ must evaluate the claimant's symptoms, as well as other signs and laboratory findings, and determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *see also Dudelson v. Barnhart*, 2005 WL 2249771, at *12 (S.D.N.Y. 2005). If a medically determinable impairment exists, the ALJ must "rate the degree of functional limitation resulting from the impairment [ ]." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). This process requires the ALJ to examine all relevant clinical and laboratory findings, as well as the effects of the symptoms on the claimant, the impact of medication and its side effects, and other evidence relevant to the impairment and its treatment. 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1). The ALJ must rate the degree of the claimant's functional limitation in four specific areas, referred to as "Paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ rates the first three areas on a five-point scale of "none," "mild," "moderate," "marked," and "extreme," and the fourth area on a four-point scale of "none," "one or two," "three," and "four or more." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If the first three areas are rated as "none" or "mild," and the fourth as "none," the ALJ will conclude that the mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

A diagnosis of a mental impairment, such as depression, without more, does not suggest that a plaintiff's mental impairment severely impairs his performance of any major life activity. *See Torres v. Astrue*, 550 F.Supp.2d 404, 411 (W.D.N.Y. 2008).  The medical evidence must show that the mental impairment precludes a plaintiff from performing basic mental work activities.  *See Snyder v. Astrue*, 2009 WL 2157139, at *4 (W.D.N.Y. 2009).

### A.    Relevant Medical Evidence

On April 12, 2007, plaintiff was evaluated by Diane Szlamczynski, a Social Worker.  Ms. Szlamczynski noted that plaintiff had difficulties walking, appeared to be in discomfort, was unkempt and dirty. (T. 204).  Plaintiff detailed a tragic family history of neglect including abandonment, living on the streets and starving for food.  Ms. Szlamczynski noted that plaintiff cried throughout the interview and that his memory and concentration were impaired as he "relived" his past.  She diagnosed plaintiff with depression, memory loss and difficulties and anxiety.

On May 14, 2007, Kristen Barry, Ph.D. performed a psychiatric evaluation of plaintiff at the request of the agency. (T. 218).  Dr. Barry noted that plaintiff had no history of psychiatric hospitalization, treatment, counseling or medication.  Dr. Barry noted that plaintiff had a history of arrest due to violent crimes with a history of alcohol abuse. (T. 219).  Plaintiff was neatly groomed and displayed good hygiene.  Dr. Barry diagnosed plaintiff with alcohol dependency, depressive disorder and personality disorder and recommended psychiatric treatment and treatment for alcohol.  Dr. Barry opined that plaintiff was able to follow and understand simple directions and instructions.  His ability to maintain attention and concentration was "fair" and he was able to perform simple tasks independently.  She noted that plaintiff had a history of alcohol dependence, poor judgment, difficulty controlling his anger and handling stressors.  (T. 221).

On June 20, 2006, Dr. A. Hochberg, a psychological consultant, completed a Mental Residual Functional Capacity Assessment. (T. 239).  The consultant made note of plaintiff's "examinations" and while the consultant did not identify which specific examination, based upon the summary and language used in the consultant's report, the "examination" referred to was Dr. Barry's examination.[2]  The consultant opined that plaintiff displayed moderate limitations in the ability to understand, carry out and remember detailed instructions, perform activities within a schedule, sustain a routine or work in close proximity to others.  Plaintiff exhibited moderate limitations in social interactions and no limitations in the ability to adapt. (T. 239-40).

### B.    Analysis

The ALJ discussed the "Paragraph B" criteria and concluded that plaintiff has no restriction in the activities of daily living; mild limitations in social functioning; mild limitations with regard to concentration, persistence and pace. (T. 18-19).  The ALJ also found that plaintiff did not experience any episodes of decompensation for an extended duration. (T. 19).

With regard to social functioning and concentration, persistence and pace, the ALJ found:

> In May 2007, [plaintiff] was living with his uncle.  He reported to Dr. Barry that his family relationships were good but he did not often socialize with others and had no hobbies . . . At the hearing, he testified that he gets frustrated with people and doesn't like company but he lives with his cousin and spends time with his grandkids. (T. 18-19).

> In May 2007, [plaintiff] was able to do counting, some simple calculations and serial 3s.  Dr. Barry's exam showed that his attention and concentration were grossly intact . . . At the hearing , the claimant alleged that he had difficulty concentrating on television shows but it should be noted that he spent most of [sic] day watching television by his own testimony. (T. 19).

---

[2] The consultant noted that plaintiff was neatly groomed and appropriately dressed.  That his language skills were appropriate and thought processes were coherent with no evidence of hallucinations, delusions or paranoia.  Plaintiff's attention and concentration were grossly intact.  (T. 240-41).  This summary is taken directly from Dr. Barry's report, almost verbatim.

Plaintiff argues that the ALJ improperly assigned "some weight" to Dr. Barry's assessment and "little weight" to Hochberg's analysis because the opinions are consistent. Moreover, plaintiff argues that Dr. Barry and Hochberg's opinions are consistent with the social worker's assessment and the ALJ disregarded all three opinions when she found the impairments "not severe". Defendant contends that Dr. Barry's examination did not indicate that plaintiff's depression was severe. Moreover, defendant claims that plaintiff's own testimony belies his contentions.

Based upon a review of the record, the Court finds that substantial evidence supports the ALJ's determination that plaintiff's mental impairments do not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities. The record establishes that plaintiff never complained of depression or any other mental defect to any treating or medical provider. Plaintiff has never been treated for depression or any other mental defect. Plaintiff was not prescribed any medication for mental impairments and was never hospitalized for any such impairments. During his administrative hearing, plaintiff admitted that he was not treating for depression or anxiety. (T. 45). Plaintiff lives with his cousin and testified that he is able to interact with his grandkids and that he is "one of the nicest persons you want to meet" and that he does not get frustrated around people. (T. 47). Plaintiff testified that he is able to manage his own money and in terms of depression, he commented that he didn't feel that he had to stay in bed or "give up" but that some days, he just didn't want to be "bothered". (T. 47). While Dr. Barry diagnosed plaintiff with depression, she did not opine that the impairment was "severe" or that it would prohibit plaintiff from performing basic work activities. Indeed, Dr. Barry opined that plaintiff "can follow and understand simple directions and instructions and perform simple tasks". (T. 221). With respect to the social worker's opinion, the ALJ gave her opinion "little weight" as

she was not an acceptable medical source.  Ms. Szlamczynski only saw plaintiff on one occasion and prepared a brief, one-page report that simply reiterated plaintiff's subjective complaints and described his appearance and demeanor.  Ms. Szlamczynski's report does not persuade this Court that plaintiff suffers from any severe mental impairment.  Consequently, the Court finds that there is substantial evidence to support the ALJ's decision that plaintiff's anxiety and depression were non-severe impairments that did not prevent him from engaging in substantial gainful activity.

## II.    Duty to Develop Record

An ALJ has an obligation to develop the administrative record, including, in certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information.  *Lukose v. Astrue*, 2011 WL 5191784, at *3 (W.D.N.Y. 2011) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).  The ALJ will obtain additional evidence if he/she is unable to make a determination of disability based on the current record.  20 C.F.R. § 404.1527(c)(3).  The Regulations provide:

> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

20 C.F.R. § 404.1527(c)(3).

This duty exists regardless of whether Plaintiff has counsel or is continuing *pro se.  Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).  "The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating

physician' provisions in the regulations." *Dickson v. Astrue*, 2008 WL 4287389, at *13 (N.D.N.Y. 2008). The caselaw in this Circuit is clear as courts have consistently held that if the record does not contain any Medical Source Statement or RFC Assessment from plaintiff's treating physician, the ALJ has a duty to contact plaintiff's treating physician in an attempt to obtain an assessment. *See Pitcher v. Barnhart*, 2009 WL 890671, at *14 (N.D.N.Y. 2009) (an MSS or RFC from the treating physician was important because the ALJ granted the other physician's MSS "moderate weight," and the only other individual to assess Plaintiff's RFC was a disability analyst); *see also Hopper v. Comm 'r of Soc. Sec.*, 2008 WL 724288, at *11 (N.D.N.Y. 2008); *see also Dickson*, 2008 WL 4287389, at *13. This duty also includes advising the plaintiff of the importance of such evidence. *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004) ("[a]t a minimum, if the ALJ is inclined to deny benefits, he should advise a claimant that her case is unpersuasive and suggest that she supplement the record or call her treating physician as a witness") (citation omitted). The Regulations provide that, "[t]he Commissioner should request an MSS from the claimant's treating physician if such a statement has not been provided. *Outley v. Astrue*, 2010 WL 3703065, at *4 (N.D.N.Y. 2010) (citing 20 C.F.R. § 416.912(d) (explaining that the Commissioner will "make every reasonable effort to help you get medical reports from your own medical sources, a medical report should include an MSS"). In decisions involving the ALJ's duty to obtain an MSS, courts frequently cite to Judge Spatt's explanation in *Peed v. Sullivan*:

> What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed opinion as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician.

*Peed v. Sullivan*, 778 F.Supp. 1241, 1246 (E.D.N.Y.1991).

"Although the regulation provides that the lack of such a [MSS] statement will not render a report incomplete, it nevertheless promises that the Commissioner will request one." *Johnson v. Astrue*, 2011 WL 4348302, at *10 (E.D.N.Y.2011) (citations omitted). The ALJ must request such a statement regardless of whether the record contains a complete medical history. *Id.* (citing § 404.1513(b)(6)). The failure to contact the physicians constitutes a breach of the ALJ's duty to develop the record and provides a basis for remand. *Lawton v. Astrue*, 2009 WL 2867905, at * 16 (N.D.N.Y. 2009).

### A.    Syed Gardezi, M.D. and Stephen Robinson, M.D.

On January 10, 2007, plaintiff treated with Dr. Gardezi, his primary care physician, for complaints of low back pain.[3]  On examination, plaintiff exhibited normal reflexes and the doctor found no tenderness in the spine.  Dr. Gardezi noted, "I have informed him that the most likely culprit for his memory loss and his pain would be alcohol and that he should stop drinking".  (T. 193).  An x-ray of plaintiff's lumbar spine, taken on January 11, 2007, revealed arthritic changes and disc narrowing at L3/4 and L4/5. (T. 496).  The last treatment record from Dr. Gardezi is dated March 19, 2007 for complaints of shortness of breath.  Plaintiff did not make any complaints of back pain and Dr. Gardezi did not exam plaintiff's back or provide any opinion or diagnosis with respect to plaintiff's lower back.  (T. 191).

On May 2, 2007, plaintiff appeared at Syracuse Orthopedic Specialist ("SOS") for complaints of back pain upon referral from Dr. Gardezi. (T. 498).  Plaintiff was seen by Dr. Stephen Robinson.  Upon examination, Dr. Robinson noted that plaintiff's spine was tender, straight leg raising was normal to ninety degrees, sensation was normal, range of motion in his

---

[3] The record contains one prior treatment note from Dr. Gardezi, on April 27, 2006.  However, Dr. Gardezi treated plaintiff for a rash and therefore, the note is unrelated to the issues herein. (T. 194).

11

knees and hips was normal and there was no deformity in his spine.  Dr. Robinson diagnosed

plaintiff with chronic lumbar syndrome and prescribed physical therapy and over the counter

medication.

On July 2, 2007, plaintiff returned to SOS and was seen by Linda Selinsky, NP. (T. 495).

Plaintiff complained of debilitating back pain but admitted that he did not attend physical therapy

because he lost the prescription.   Upon examination, Nurse Selinsky noted that plaintiff had

difficulty ambulating and climbing on/off the examination table.  Plaintiff's station was normal

and there was some mild palpation of the spine.  Range of motion examinations could not be

completed due to pain and straight leg raising was normal.  Plaintiff's motor examination of both

legs was 5/5 and sensory examination was normal.  Plaintiff was advised to attend physical

therapy and was prescribed Ultracet.

On August 21, 2007, plaintiff returned to SOS for an examination with Nurse Selinsky for

back pain.  (T. 492).  Plaintiff did not attend physical therapy and stated that he wanted surgery.

Upon examination, Nurse Selinsky noted that plaintiff's station was normal with mild tenderness

over the mid-spine.  Straight leg raising produced pain at ninety degrees.  Plaintiff's motor

examination in both legs was 5/5 and sensory was normal.  Range of motion in legs was full and

painless.  Nurse Selinsky scheduled an MRI and advised plaintiff to follow with Dr. Robinson for

the results.

On August 24, 2007, an MRI of plaintiff's lumbar spine revealed degenerative disc

changes at L3/4 without herniation and at L4/5 with disc protrusion encroaching slightly on the

thecal sac. (T. 491).

On March 11, 2008, plaintiff had a follow up visit with Dr. Robinson for the results of his

MRI. (T. 487).  Plaintiff complained of increasing back pain with difficulty walking.  Upon

examination, Dr. Robinson noted that plaintiff's spine was tender with no deformity.  Plaintiff ambulated well, straight leg raising to ninety degrees with no pain.  The motor examination of lower extremities was normal.  Dr. Robinson diagnosed plaintiff with chronic lumbar radicular complaints secondary to herniation and stenosis at L4-5.  Dr. Robinson discussed nerve blocks but plaintiff desired to have surgery.  Dr. Robinson informed him that he needed more information before surgery could be scheduled.  Plaintiff was advised to consult pain management.

    Plaintiff argues that the ALJ failed to develop the record by not obtaining opinions regarding plaintiff's functional limitations from Dr. Gardezi or Dr. Robinson.  Indeed, the record does not contain a functional evaluation from any treating source.  However, based upon the record and plaintiff's lack of treatment, the ALJ was not obligated to contact Dr. Gardezi or Dr. Robinson to obtain their opinions because they were not "treating physicians" for the purposes of the issues herein.  With respect to Dr. Gardezi, plaintiff made only one complaint of back pain to the doctor.  The doctor performed a cursory examination of plaintiff's back and did not provide plaintiff with the type of ongoing medical treatment for his back complaints that would define him as a "treating physician".  *See Quinones v. Barnhart*, 2006 WL 2136245, at *7 (S.D.N.Y.2006) (holding that the treating physician's opinion was correctly afforded less weight as he only saw the plaintiff on one occasion).  Moreover, Dr. Gardezi's treatment and office notes lack any opinion, diagnosis or course of treatment for plaintiff's back complaints.  Indeed, the doctor opined that plaintiff's alcohol use was the cause of his pain.

    With respect to Dr. Robinson, the doctor treated plaintiff on only two occasions and his examinations were two years apart.  In fact, plaintiff had an MRI in August 2007 and did not return for a follow up examination for the results of that examination until March 2008.  The

nature of Dr. Robinson's relationship with plaintiff does not rise to the level of a treating physician. *See George v. Bowen*, 692 F.Supp. 215, 219 (S.D.N.Y. 1988) (holding that the nature of the physician's relationship with the plaintiff did not rise to the level of a treating physician as the physician had only seen the plaintiff on two occasions). Furthermore, Dr. Robinson's office notes indicate that plaintiff was not compliant with Dr. Robinson's recommended course of treatment and Dr. Robinson's objective examinations were largely normal. In his notes, the doctor did not provide any opinion with regard to plaintiff's functional limitations. Based upon the lack of treatment and plaintiff's failure to identify any gaps in Dr. Robinson's records, the ALJ was not required to recontact the physician.

While the ALJ has a duty to recontact treating physicians to obtain a complete medical history, 20 C.F.R. §§ 404.1212(e)(1), 416. 912(e)(1), the ALJ had no such duty in this matter because Drs. Gardezi and Robinson were not treating physicians. Moreover, plaintiff has not identified any gaps in the record that would require the ALJ to recontact any physician. *See Spruill v. Astrue*, 2008 WL 4949326, at *4 (S.D.N.Y.2008) (the record contained treating physicians treatment notes for the dates that the plaintiff claims she was treated). Based upon the record, the ALJ's failure to recontact Dr. Gardezi and Dr. Robinson for an opinion on plaintiff's functional abilities does not necessitate remand.

### B.    Amy Lazzarini, M.D.

The record does not contain any medical records from Amy Lazzarini, M.D.. Plaintiff claims that the ALJ failed to adequately develop the record and request the medical records from Dr. Lazzarini. Defendant argues that sufficient steps were taken to obtain Dr. Lazzarini's records and moreover, plaintiff's counsel was given the opportunity to present evidence from Dr. Lazzarini and failed to do so. (Dkt. No. 12, p. 5-6). Plaintiff's argument is nebulous, at best.

Indeed, plaintiff has not indicated when he treated with the doctor, what treatment she prescribed, how often he treated and had to search the Internet to determine the nature of the doctor's speciality.  Plaintiff has not established that Dr. Lazzarini provided any relevant treatment, that she was a treating physician or that there are gaps in the record compelling the ALJ to contact the physician for her records.  Accordingly, this argument lacks merit and does not provide a basis for remand.

**III.    RFC**

Residual functional capacity is:

> "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96–8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  The ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e).  The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairment affects his ability to work.  *Napierala v. Astrue*, 2009 WL 4892319, at * (W.D.N.Y. 2009) (citing 20 C.F.R. § 404.1513(c),(d)).  The opinions of a disability analyst

regarding a claimant's RFC "are not entitled to any medical weight." *Buschle v. Astrue,* 2012 WL 463443, at *3 (N.D.N.Y. 2012) (citation omitted).   However, where an ALJ improperly relies upon such an opinion, and other competent medical evidence regarding the claimant's RFC is present in the record, the error does not require remand. *Id.* (citing, *inter alia, Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (explaining that remand for an error is unnecessary where reconsideration, in light of the proper legal standards, would lead to the same conclusion previously reached)).   "The sheer fact that the ALJ's RFC assessment corresponds with the disability analyst's assessment, does not establish that the ALJ gave controlling weight to or otherwise impermissibly relied on the disability analyst's assessment." *Raite v. Astrue,* 2010 WL 4781562, at *5 (N.D.N.Y. 2010) ("the consistency between the ALJ and the disability analyst's findings can be explained by the fact that they each had access to and relied on the same evidence, namely the opinions and treatment notes" and non-medical submissions).

Plaintiff argues, "it is unclear how the ALJ decided plaintiff's RFC" because there is no medical opinion supporting the finding other than the opinion of the disability analyst.  On May 14, 2007, Dr. Kalyani Ganesh performed an orthopedic examination at the request of the agency. Dr. Ganesh opined that plaintiff had, "[n]o gross physical limitation noted to sitting, standing, walking or the use of upper extremities". (T. 212).   The ALJ assigned "little weight" to Dr. Ganesh's opinion finding it inconsistent with plaintiff's MRI films which revealed some mild pathology.  (T. 21).  The record also contains a Physical RFC Assessment from A. Lasky, a disability examiner.  The ALJ discussed the state agency disability analysts' opinion:

> In June 2007, a state agency disability analyst opined that the claimant
> could lift or carry 20 pounds occasionally and 10 pounds frequently,
> stand and/or walk about 6 hours in an 8-hour day and sit about 6 hours
> in an 8-hour day.  However, a disability analyst is not a medically
> trained professional.  Nonetheless, [his opinion] is consistent with the
> record of evidence except that he found no environmental limitations.

> Given the claimant's treatment with inhalers and his two bouts of pneumonia, a finding of environmental limitations with regard to respiratory irritants would not be inconsistent with the medical evidence. (T. 21).

The ALJ found that plaintiff had the RFC to, "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour day and sit 6 hours in an 8-hour day.  He must avoid concentrated exposure to respiratory irritants".  (T. 20).

Here, while the ALJ's assessment mirrors the disability analyst's conclusions, it is actually less conservative than the analyst's because the analyst found no environmental limitations.  Moreover, while the ALJ may have improperly afforded too much weight to the disability analyst's opinion, substantial evidence supports the RFC Assessment.  The ALJ evaluated and considered all objective medical evidence, plaintiff's testimony and plaintiff's written submissions.  The ALJ discussed plaintiff's treatment with Dr. Gardezi and Dr. Robinson, his July 2008 nerve block, his hospitalizations, his consultative examinations with Drs. Barry and Ganesh, his consultation with Ms. Szlamczynski and his MRI films.  The ALJ also noted that during his hearing, plaintiff testified that he could make his bed, vacuum, cook, do dishes and babysit his grandkids.  The ALJ also referenced Dr. Barry's report where she indicated that plaintiff "walked 1 ½ miles to his consultative examination".  (T. 22).  Indeed, plaintiff does not cite to any medical evidence that was not addressed and considered by the ALJ.  Therefore, based upon the record, the Court finds that the RFC assessment is supported by substantial evidence.

## IV.    Credibility

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).  If plaintiff's testimony concerning the intensity, persistence or

functional limitations associated with his impairments is not fully supported by clinical evidence,

the ALJ must consider additional factors in order to assess that testimony, including: 1) daily

activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and

aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§

404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective

findings are consistent with an inability to perform all substantial activity, but whether plaintiff's

statements about the intensity, persistence, or functionally limiting effects of her symptoms are

consistent with the objective medical and other evidence.  *See* SSR 96–7p, 1996 WL 374186, at

*2 (SSA 1996). One strong indication of credibility of an individual's statements is their

consistency, both internally and with other information in the case record.  SSR 96–7p, 1996 WL

274186, at *5 (SSA 1996).

  After considering plaintiff's subjective testimony, the objective medical evidence, and any

other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.

*Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4),

416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity

to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and

whether his decision is supported by substantial evidence.  *Melchior v. Apfel*, 15 F.Supp.2d 215,

219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations

omitted)).  The Commissioner may discount a plaintiff's testimony to the extent that it is

inconsistent with medical evidence, the lack of medical treatment, and her own activities during

the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007).  The

ALJ must also consider whether "good reasons" exist for failing to follow the prescribed

treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82–59; *see also Grubb v. Apfel*, 2003 WL 23009266, at \*4–\*8 (S.D.N.Y. 2003).

On the issue of credibility, the ALJ found that plaintiff's statements concerning his symptoms were not credible to the extent they are inconsistent with the RFC. (T. 22).   Plaintiff claims that this assessment is erroneous as the regulations require the ALJ to consider the entire case record, not the ALJ's own RFC finding, because credibility must be decided prior to the RFC determination.  (Dkt. No. 11, p. 20).  Plaintiff argument is conclusory and based solely upon the ALJ's sentence that "to the extent they are inconsistent with the above RFC".  This statement does not indicate that the RFC assessment was a basis for a finding of lack of credibility.  *See Briscoe v. Astrue*, 2012 WL 4356732, at \*17 (S.D.N.Y. 2012) (the ALJ's decision discussed, in detail, the aspects of the plaintiff's testimony that were contradicted by other evidence in the record, and explains which aspects of his testimony he found credible).  Here, the ALJ discussed, throughout the decision, plaintiff's medications, failure to comply with prescribed treatment, inconsistent accounts of alcohol use, daily activities and complaints of pain.  Thus, it is clear that the ALJ assessed plaintiff's credibility before determining the RFC.

Plaintiff also argues that the ALJ failed to properly consider plaintiff's daily activities, his medications and other measures taken to relieve pain, as required by the regulations.  *Id.* at p. 22. Based upon the record, the Court finds that the ALJ properly considered the evidence and applied the appropriate factors in her credibility assessment.  As discussed in Part III, the ALJ's RFC determination was supported by substantial evidence.  Moreover, the ALJ thoroughly discussed plaintiff's daily activities and medications (including his inhalers, over-the-counter medications, Ultracet and Tramadol). (T. 17, 22).  While the ALJ did not discuss side-effects of these medications, the record does not establish that plaintiff experienced any side-effects.   The ALJ

also noted that plaintiff was not compliant with his course of treatment (refused to go to physical therapy) and inconsistent with his accounts of his history with alcohol. (T. 21). The ALJ also discussed other measures taken by plaintiff to alleviate his pain, including nerve blocks in July 2008. (T. 17).

Based upon the record, the Court finds that the ALJ properly applied the regulations in her assessment of plaintiff's credibility.

## V.      Vocational Expert

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids.[4] *Pratt,* 94 F.3d at 39. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa*, 168 F.3d at 79. Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)". *Id*. at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[5] *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986). The testimony of a vocational expert that jobs

---

[4]  An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y.1998).

[5]  A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); *see also Rodriguez* , 1998 WL 150981, at * 10, n. 12.

exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id*. The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity". *Id*. at 606. Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 604). Therefore, when considering nonexertional impairments, the ALJ must first consider the question-whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony. *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y.2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

Plaintiff argues that the ALJ inappropriately relied exclusively on the Medical–Vocational Guidelines, or "grids" and erred in failing to elicit vocational expert testimony.  Plaintiff bases this argument on the fact that the RFC is unsupported by substantial evidence.  In this regard, plaintiff relies upon prior arguments regarding the severity of his mental impairments and the ALJ's duty to develop the record.  As discussed above, substantial evidence supports the ALJ's decisions on these issues and substantial evidence supports the RFC assessment.  Plaintiff presents no novel arguments in support of remand on this issue.

**VI.    New Evidence**

Plaintiff argues that the Appeals Council should have remanded the matter to the ALJ based upon new evidence that is relevant to the time period prior to the ALJ's decision. (Dkt. No. 11, p. 13).

The Appeals Council shall consider evidence that is "new and material and relates to the period on or before the ALJ's decision." *Perez*, 77 F.3d at 45 (citing 20 C.F.R. §§ 404.970(b) and 416.1470(b). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Hickman ex rel. M.A.H. v. Astrue*, 728 F.Supp.2d 168, 182 (N.D.N.Y. 2010) (citing 20 C.F.R. §§ 404.970(b); 416.1470(b)). "'Weight of the evidence' is defined as the balance or preponderance of evidence; the inclination of the greater amount of credible evidence to support one side of the issue rather than the other." *Id*. (citing HALLEX: Hearings, Appeals and Litigation Manual I-3-3-4 (S.S.A.2009) available at http:// www. ssa. gov/ OP_ Home/ hallex/ I- 03/ I- 3- 3- 4. html). Even if the Appeals Council denies review, evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record to be considered on judicial review. *Perez*, 77 F.3d at 45. The Regulations provide: "[i]f you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application." 20 C.F.R. §§ 404.976(b) (1), 416.1476(b)(1); *see also Robins v. Astrue*, 2011 WL 2446371, at *5 (E.D.N.Y. 2011); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (the plaintiff is free to file a new application for benefits, pursuant to the relevant regulations, and to present new evidence of his disability at that time).

The role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision. *Edwards v. Astrue*, 2010 WL 3701776, at *7, n.12 (N.D.N.Y. 2010) (citation omitted).  The Court must consider whether: (1) the additional evidence is new, rather than merely cumulative; (2) the evidence is material, that is, relevant to the time period for which benefits were denied, probative, and reasonably likely to have altered the administrative decision if known at the time; and (3) good cause exists for the failure to present the evidence earlier. *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir.1988).  To be material, the evidence must create a reasonable possibility that the Commissioner's previous determination would be influenced by the information.  *See Gonzalez ex rel. Gonzalez v. Barnhart*, 2004 WL 1460634, at *5 (S.D.N.Y.2004).  Evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record to be considered on judicial review.  *Perez*, 77 F.3d at 45.  The Court must distinguish between new evidence that reflects on the severity of the plaintiff's impairment as it existed during the time for which benefits were denied and new evidence which represents new impairments which would not have affected the decision below.  *Bosmond*, 1998 WL 851508, at *11–13 (the plaintiff's additional evidence pertained to new problems including spinal stenosis and arthritis while the record before the ALJ involved the plaintiff's carpal tunnel syndrome) (citing *Hernandez v. Sullivan*, 1992 WL 315637, at *3 (S.D.N.Y.1992)). The ALJ's decision will stand when a post-determination diagnosis does no more than indicate the more recent onset of disability. *Id*. (holding that the new evidence did not indicate that the plaintiff was disabled at the prior relevant periods by her more recently diagnosed problems). "A diagnosis that post-dates an administrative hearing may be considered new evidence relating to the relevant time period only if it reveals that a claimant 'had an impairment substantially more severe than was previously diagnosed.'" *Florek*

*v. Comm'r of Soc. Sec*., 2009 WL 3486643, at \*11 (N.D.N.Y.2009) (citing *Xu v. Barnhart*, 2006 WL 559263, at \*7 (E.D.N.Y. 2006)).

In this matter, following the ALJ's decision, plaintiff submitted new evidence to the Appeals Council for consideration.  On December 13, 2010, plaintiff had an initial consultation with Dr. Suhas Pradhan for a cardiac "work-up".  A CT scan of plaintiff's chest revealed a spiculated right upper lobe lesion and subtle lytic areas in the L1 vertebral body including extension into the posterior right ribs. (T. 502).  Dr. Pradhan noted that plaintiff suffered from chronic back problems, took injections and walked with a "stick".  Upon examination, Dr. Pradhan found no palpable lymph nodes in the neck and clear lungs.  Dr. Pradhan suspected carcinoma but recommended a needle biopsy and a PET scan.  On December 22, 2010, Dr. Pradhan noted that a needle biopsy confirmed non-small cell carcinoma.

In the May 4, 2011 notice, the Appeals Council acknowledged receipt of the new evidence and considered the evidence. (T. 5).  This Court must determine whether the evidence is new, material and related to the period on or before the date of the ALJ's decision.  While Dr. Pradhan's records are clearly new, the records fail the materiality test.  The record before the ALJ contained evidence regarding plaintiff's right upper lobe lesion which was considered by the ALJ. (T. 285, 481).  Indeed, the ALJ found that plaintiff must avoid respiratory irritants.  Even assuming Dr. Pradhan's records contained evidence of a worsening condition, i.e., a lesion in the right upper lobe, it seems unlikely that Dr. Pradhan's post-hearing records, if received earlier, would have altered the ALJ's decision.  Plaintiff argues that, "treatment and limitations stemming from a cancer in plaintiff's lung would reasonably have had a unique set of limitations which plaintiff's physicians could have offered had the case been remanded".  However, plaintiff did not claim that he was disabled due to cancer and the records before the ALJ contained no evidence of

cancer.  Dr. Prahan examined plaintiff once and his treatment was essentially diagnostic in nature.  Dr. Pradhan did not prescribe any course of treatment for the lesion or cancer and offered no opinion with respect to plaintiff's functional limitations. The new evidence does not establish that plaintiff was disabled during the relevant period by cancer.  The records contain no evidence of any diagnosis until December 2010.  Plaintiff had the option of submitting a new application for benefits based upon the new diagnosis.  *See Knott v. Astrue*, 2012 WL 3581437, at *4 (N.D.N.Y. 2012) (the plaintiff's recourse, upon developing wrist pain in the weeks following the ALJ's decision, was to file a new application for benefits, rather than submit evidence regarding a new diagnosis under an already decided claim).

Accordingly, the Court finds that the Appeals Council's review of the evidence was appropriate and that the Appeals Council's decision not to remand the matter to the ALJ was not in error.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated:  November 28, 2012
        Albany, New York

Mae A. D'Agostino
U.S. District Judge